1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 DIVERSIFIED RESTAURANT GROUP, LLC, et al., | Case No.  25-cv-02344-EMC |
| 8 | |
| Plaintiffs, | |
| 9 | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| 10 | |
| HOUSTON CASUALTY COMPANY, et al., | Docket No. 17 |
| 11 | |
| 12 Defendants. | |

13

14 ### I.    <u>INTRODUCTION</u>

15    Plaintiffs Diversified Restaurant Group ("DRG"), LLC, and Golden Gate Bell ("GGB"),

16 LLC, both California limited liability companies who own and/or operate a number of restaurants,

17 filed suit against Defendants Houston Casualty Company ("HCC"), Pennsylvania Manufacturers

18 Indemnity Company ("PMIC") and Manufacturer's Alliance Insurance Company ("MAIC")

19 seeking insurance coverage for the defense of an underlying lawsuit.  Docket No. 16 ("FAC").

20 Plaintiffs (herein "Insureds") have been sued for sexual harassment in the underlying action

21 ("Underlying Action")[1].  The plaintiff in Underlying Action (a former employee who alleges she

22 was sexually harassed and assaulted by her supervisor) asserts thirteen claims against HCC, DRG

23 and GGB, and was filed in Antioch, California.

24    Through a package insurance policy, the Insureds contracted with PMIC for general

25 liability insurance, and with MAIC for workers compensation and employer's liability policy.

26

27 [1] The complaint of the Underlying Action, found at Docket No. 26, Exhibit A, was filed in the
Superior Court for the State of California, case No. C23-00634, entitled *Jane Doe v. Golden Gate
Bell, LLC*; Rafael Moreno; and Does 1 through 50. The Court takes judicial notice of the
28 Underlying Action pursuant to Evidence Code section 452, subdivision (d).

FAC ¶ 24.  Additionally, the Insureds contracted with HCC for employment practices liability insurance.[2]  The Insureds allege Defendants HCC, PMIC, and MAIC failed to provide insurance coverage and to defend the Insureds in the Underlying Lawsuit filed by a former employee (herein "Underlying Plaintiff").  The Insureds further allege that this failure constitutes a breach of contract and a breach of implied covenant of good faith and fair dealing.  The Insureds seek compensatory and punitive damages against HCC, PMIC, and MAIC and a declaration that the Defendants are obligated to defend and indemnify the Insureds in the Underlying Action.  *See generally* FAC.

Before the Court is PMIC's and MAIC's motion to dismiss the FAC under Fed. R. Civ. P.12(b)(6).  MAIC and PMIC (herein "Insurers") state that the claims in the Underlying Action are not covered by the general liability policy issued by PMIC ("PMIC Policy" or "PMIC Agreement"), because of the Employment Related Practices Exclusion ("ERP Exclusion") and/or the Employment Liability Exclusion ("EL Exclusion").  *See* FAC ¶ 19; Mot. at 9.  Insurers also state that the claims in the Underlying Action are not covered by the worker's compensation and employer's liability insurance policy issued by MAIC ("MAIC Policy" or "MAIC Agreement") due to the exclusion under Section C.7 ("C.7 Exclusion").  *Id.*  HCC which provided employer liability insurance to the Insureds has not moved to dismiss.  For the reasons below, Insurers' Motion to Dismiss is **GRANTED**.

.

## II.  BACKGROUND

### A.  Procedural Background

The Insureds initiated this suit on January 22, 2025.  In March 2025, the case was removed from Contra Costa County Superior Court.  *See* Docket No. 1 (Complaint).  In May 2025, the Insurers moved to dismiss for failure to state a claim for which relief may be granted.  *See* Docket

---

[2] HCC's policy provides coverage for claims involving sexual discrimination and harassment, retaliation, and inappropriate workplace conduct.  *See* Docket No. 16-3 at 42, 45-46. HCC has not brought a motion to dismiss and is not a party to the present Motion to Dismiss.

United States District Court
Northern District of California

No. 25. ("Mot.").

**B.     <u>Underlying Action</u>**

In March 2023, the Underlying Plaintiff lodged a Department of Fair Housing Complaint alleging thirteen claims against the Insureds, DRG, GGB, former employee Rafael Moreno (herein "Underlying Defendant," or "Moreno"), and DOES 1-50 (agents, employees, and/or joint ventures of, or working in concert with the other Defendants). *See* FAC ¶¶ 5-7, 24. The Underlying Action includes the following claims: "(1) Negligence, Negligent Hiring, Negligent Retention, and Negligent Failure to Train and Supervise; (2) Workplace Sexual Harassment; (3) Discrimination based on Sex; (4) Violation of the Ralph Civil Rights Act; (5) Violation of the Tom Bane Civil Rights Act; (6) Hostile Work Environment; (7) Failure to Take Reasonable Steps to Prevent Harassment; (8) Failure to Investigate; (9) Retaliation; (10) Failure to Prevent Discrimination; (11) Wrongful Constructive Discharge; (12) Wrongful Termination in Violation of Public Policy; and (13) Failure to Timely Pay Final Wages." *See* FAC ¶ 47.

The Insureds state that the following relevant allegations in the Underlying Action give rise to coverage under the MAIC Policy and/or the PMIC Policy:

a. "On multiple occasions" alleged tortfeasor "cornered Plaintiff [the Employee] into an enclosed room, blocked the door, forcing himself close to Plaintiff, and rubbed his genitals on Plaintiff's buttocks as she tried leaving the room. Further, Underlying Defendant would frequently brush up against Plaintiff's breasts when walking past her." (Compl. ¶ 17)

b. When the alleged tortfeasor "cornered" Plaintiff, he "put his hand on her thighs and proceeded to rub her legs" and "laughed and walked away" and "then forced his hands up her shirt and down her pants" and "attempted to unbutton her pants and forcefully kissed her neck" and he "whispered that he would like to have sex with her." (*Id.* ¶ 18.)

c. The alleged tortfeasor "constantly made sexual remarks about Plaintiff's butt, such as, 'those pants really fit your ass', 'your ass looks really nice in those', and even told Plaintiff, 'Can you clean all those things so I can look at your ass?" (*Id.* ¶14.)

d. It was reported to a "manager" of the Insureds that the alleged tortfeasor "had a history of inappropriate conduct in the workplace with girls under the age of 18, but [they] did nothing to prevent the harassment from continuing" and that Underlying Defendant "lived with an underage girl." (*Id.* ¶ 15.)

e. Insureds "negligently failed to supervise or provide reasonable supervision of" the alleged tortfeasor. (*Id.* ¶ 42.)

f.   Insureds "should have known that" the alleged tortfeasor "was acting inappropriately with employees" and "failed to investigate" and "continued to employ" him "despite evidence that his conduct was inappropriate." (*Id.* ¶ 39.)

g.   Insureds "failed to use reasonable care in investigating" alleged tortfeasor and "failed to provide adequate warning to Plaintiff, Plaintiff's families and minors at work" of his alleged "dangerous propensities and unfitness." (*Id.* ¶ 40.)

h.   Insureds "failed to take reasonable measures to prevent further sexual abuse." (*Id.* ¶ 41.)

i.   Insureds' conduct and the maintenance of "dangerous conditions were a proximate cause of Plaintiff's damages" and Insureds are liable because the alleged tortfeasor was their "agent" and acting "within the course and scope of the agency." (*Id.* ¶¶ 11, 24, 41, 45.)

j.   "As a direct and legal result of the acts" of Insureds and the alleged tortfeasor, "Plaintiff has been caused, and did suffer, and continue[s] to suffer severe and permanent emotional and mental distress, and anguish humiliation, embarrassment, fright, shock pain, discomfort and anxiety." (*Id.* ¶ 25.)

k.   "As a direct result of the wrongful conduct alleged herein, Plaintiff has suffered and continue[s] to suffer, severe emotional distress, physical manifestations of emotional distress, shock, embarrassment, loss of self-esteem, disgrace, humiliation, powerlessness, and loss of enjoyment of life. Plaintiff has incurred and/or will continue to incur, expenses of medical and psychological treatment, therapy and counseling." (*Id.* ¶ 46.)

l.   "The harm to Plaintiff was physical in the sense that it affected her emotional and mental health, rather than being a purely economic harm." (*Id.* ¶ 29.)

FAC. ¶ 49. Additionally, the Underlying Action states that Moreno "occupied a managerial position . . . had direct supervisory authority over [Underlying] Plaintiff, and/or directly supervised [Underlying] Plaintiff within the scope of their employment authority." *See* Underlying Action at ¶ 51.

## C.    **PMIC's Insurance Policy and Denial of Coverage**

DRG and GGB contracted with PMIC for general liability insurance. *See* FAC. ¶ 26. In December 2022, PMIC initiated defense coverage against the Underlying Plaintiff's claim and continued to provide coverage for about five months. *See* FAC. ¶ 52-53. In May 2023, PMIC emailed the Insureds a denial letter, which stated that PMIC had no obligation to defend or indemnify the Insureds and withdrew their defense coverage. *See* FAC. ¶ 54. PMIC's denial letter stated that certain claims in the employee's lawsuit, including claims of negligence, sex discrimination, harassment, and wage/hour claim, were barred by the ERP Exclusion in the

parties' insurance contract.  *See* FAC. ¶ 55.  Additionally, PMIC stated that the remaining claims were not "occurrences" as defined under the general liability policy.  *Id.*

### D.    MAIC's Insurance Policy and Denial of Coverage

DRG and GGB contracted with MAIC for workers compensation and employer's liability insurance.  *See* FAC. ¶ 24.  MAIC refused to provide coverage taking the position that there was no possibility of coverage.  *Id.* at ¶ 56.  MAIC denied insurance defense coverage and indemnity for the underlying suit against DRG and GGB because it stated the Underlying Action was subject to the C.7 Exclusion.

### E.    Causes of Action

Based on, *inter alia*, the above allegations, the Insureds have asserted the following causes of action against PMIC, MAIC, and HCC:

      (1)     Breach of Contract

      (2)     Breach of Implied Covenant of Good Faith and Fair Dealing

      (3)     Declaratory Relief

      (4)     Breach of Contract

      (5)     Breach of Implied Covenant of Good Faith and Fair Dealing

      (6)     Declaratory Relief

      (7)     Breach of Contract

      (8)     Breach of Implied Covenant of Good Faith and Fair Dealing

      (9)     Declaratory Relief

In the pending 12(b)(6) motion, PMIC and MAIC moves to dismiss outright Counts 4-9.  Insureds' Counts 1-3 are brought against HCC (not a party to this Motion).

## III.    LEGAL STANDARD

### A.    Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A

complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550

U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the

claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the

pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &

Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not

simply recite the elements of a cause of action [and] must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

*Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual

content that allows the court to draw the reasonable inference that the Defendant is liable for the

misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## B.    Duty to Defend

To determine whether an insurer owes a duty to defend, a court must "compar[e] the

allegations of the complaint with the terms of the policy."  *Montrose Chemical Corp. v. Superior

Ct.*, 6 Cal. 4th 287, 295 (1993).  Under California law, the duty to defend is determined by

comparing the allegations of the complaint and the terms of the policy.  *Hartford Casualty Ins. Co.

v. Swift Distribution, Inc.,* 59 Cal. 4th 277, 287 (2014).  "An insurer's duty to defend is broader

than its duty to indemnify."  *Id.* at 286.  The duty to defend exists if there is any potential for

coverage under the policy, while the duty to indemnify exists only if the insured's conduct is

actually covered.  *Id.* at 295.  "A complaint must be 'liberally construed' in favor of potential

coverage."  *Michaelian v. State Comp. Ins Fund*, 50 Cal. App. 4th 1093, 1106 (1996).  The duty to

defend may still be imposed where the precise causes of action pled by the third-party complaint falls outside of the policy coverage, and under the known or reasonably inferable facts alleged, the complaint could be "fairly amended to state a covered liability." *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 287 (2014). The insurer's duty to defend is "not extinguished until the insurer negates all facts suggesting potential coverage." *Id.* Thus, "an insurer may be excused from a duty to defend only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* (internal quotations omitted). However, the duty to defend is not "not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id.* at 288.

**C.    Insurance Coverage Interpretation**

Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins Exch.*, 31 Cal. 4th 635, 647 (2003*), as modified on denial of reh'g* (Sept. 17, 2003). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contract interpretation apply." *Another Planet Ent., LLC v. Vigilant Ins. Co*., 15 Cal. 5th 1106, 1135 (2024). Therefore, "the mutual intention of the parties at the time the contract is formed governs interpretation. If the policy language is clear and explicit, it governs." *Id.* "The 'clear and explicit' meaning of these provisions, interpreted in their "ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18–19 (1995). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id.*

"In determining whether a claim creates the potential for coverage under an insurance policy, 'we are guided by the principle that interpretation of an insurance policy is a question of law' [and] the mutual intention of the parties at the time the contract is formed governs interpretation." *Jon Davler, Inc. v. Arch Ins. Co.*, 229 Cal. App. 4th 1025, 1033 (2014), *as modified* (Sept. 15, 2014). Importantly, a "complaint must be 'liberally construed' in favor of

1   potential coverage." *Michaelian v. State Comp. Ins Fund,* 50 Cal. App. 4th 1093, 1106 (1996).

2   "However, the Insureds may not speculate about unpled claims in the third-party claims to

3   manufacture coverage", and the Insureds has "no duty to defend where the potential liability is

4   'tenuous and farfetched.'" *Id.* "The ultimate question is whether the facts alleged 'fairly appraise'

5   the insurer that the suit is upon a covered claim. *Id.*

6

7                                    **IV.    DISCUSSION**

8           The parties dispute whether the Insureds have a valid claim to coverage under the

9   interpretation of the two insurance contracts.[3]  The Insurers, PMIC and MAIC, argue that the

10  Insureds' Complaint should be dismissed because the injuries alleged in the Underlying Action are

11  precluded from coverage by the PMIC Agreement due to the ERP Exclusion and the EL

12  Exclusion, and further, that coverage is precluded by the MAIC Agreement due to the C.7

13  Exclusion.  *See* Mot. at 11.  The Insurers also contest whether the Underlying Action is covered

14  under the PMIC Agreement at all, contesting whether the claims are "occurrences."  The Insureds

15  argue that the alleged conduct in the Underlying Action falls within both PMIC and MAIC

16  insurance agreements, and therefore the Insurers had a duty to defend and indemnify damages

17  arising from the suit.  *See* FAC ¶¶ 11, 93, 94, 112.

18

19  **A.    PMIC's Employment-Related Exclusion (ERP Exclusion)**

20          The PMIC Agreement includes two separate coverage sections: Coverage A – Bodily

21  Injury and Property Damage Liability, and Coverage B – Personal and Advertising Injury

22  Liability.  *See* Docket No. 16-2 at 45-46 (PMIC Agreement).  Coverage A is subject to two

23  exclusions: the EL Exclusion and the ERP Exclusion.  Coverage B subject to only the ERP

24  Exclusion.

25          **Coverage A** of PMIC's Policy provides, in pertinent part:

26

27  [3] The parties do not dispute that California law governs the Court's interpretation of the two
    Agreements because California is the forum state in this diversity action.  *See Encompass Ins. Co.*
28  *v. Coast Nat'l ns. Co.*, 764 F.3d 981, 984 (9th Cir. 2014); *Bell Lavalin Inc. v. Simcoe & Erie Gen.*
    *Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995).

United States District Court
Northern District of California

**SECTION 1 – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.
b. This insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' …

FAC. at 31, ("Coverage A").

**Exclusions [under Coverage A – Bodily Injury and Property Damage Liability]**
This insurance does not apply to:
* * *
          e. Employer's Liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or***
This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

FAC. at 32, (EL Exclusion).

**Coverage B** of PMIC's Policy provides, in pertinent part:
**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
Insuring Agreement
We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."

FAC. Exh.2 at 36, ("Coverage B").

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention, or imprisonment;

FAC. Exh.2 at 45.

United States District Court
Northern District of California

1    ERP Exclusion applies to Coverage A and Coverage B to exclude coverage, in relevant

2    part:

> **EMPLOYMENT-RELATED PRACTICES EXCLUSION**
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> The following exclusion is added to Paragraph 2., Exclusions of
> Section I – Coverage A – Bodily Injury And Property Damage
> Liability:
> This insurance does not apply to: "Bodily injury" to:
> (1) A person arising out of any:
> (a) Refusal to employ that person;
> (b) Termination of that person's employment; or
> (c) Employment-related practices, policies, acts or omissions, such
> as coercion, demotion, evaluation, reassignment, discipline,
> defamation, harassment, humiliation, discrimination or malicious
> prosecution directed at that person; or . . .
> * * *
>
> This exclusion applies:
> (1) Whether the injury-causing event described in Paragraphs (a),
> (b) or (c) above occurs before employment, during employment or
> after employment of that person;
> (2) Whether the insured may be liable as an employer or in any other
> capacity; and
> (3) To any obligation to share damages with or repay someone else
> who must pay damages because of the injury."
>
> The following exclusion is added to Paragraph 2., Exclusions of
> Section I – Coverage B – Personal and Advertising Injury Liability:
> This insurance does not apply to: "Personal and Advertising Injury"
> to:
> (1) A person arising out of any:
> (a) Refusal to employ that person;
> (b) Termination of that person's employment; or
> (c) Employment-related practices, policies, acts or omissions, such
> as coercion, demotion, evaluation, reassignment, discipline,
> defamation, harassment, humiliation, discrimination or malicious
> prosecution directed at that person; or***
> * * *
>
> This exclusion applies:
> (1) Whether the injury-causing event described in Paragraphs (a),
> (b) or (c) above occurs before employment, during employment or
> after employment of that person;
> (2) Whether the insured may be liable as an employer or in any other
> capacity; and
> (3) To any obligation to share damages with or repay someone else
> who must pay damages because of the injury."

26    Docket No. 16-2 at 67-68 (ERP Exclusion); Mot. at 13-14.

27    The Underlying Action alleges that Moreno harassed Underlying Plaintiff by "(a) regularly

28    making inappropriate, offensive comments and gestures of a sexual nature []; (b) approaching

[Underlying] Plaintiff inappropriately . . .; and (c) inappropriately touching [Underlying] Plaintiff." *See* Underlying Action ¶ 50. Additionally, the Underlying Action alleges employment-related "omissions," including Insureds' negligent hiring, retention, training, and supervision of Moreno. *Id.* at 7. Underlying Plaintiff alleges that she informed a manager about Moreno's repeated sexual harassment, and the Insureds "failed to use reasonable care in investigating . . . [and] further failed to take reasonable measures to prevent further sexual abuse." *Id.* ¶¶ 39, 41.

The Insureds argue that the Insurers have a duty to defend and indemnify because the Underlying Action (1) asserts plausible claims of sexual assault and false imprisonment which are not excluded; (2) includes a simple negligence claim for which Insureds have not established coverage; and (3) that the remaining claims do not fall within the ERP Exclusion. *See* Opp. at 11-14.

### 1. <u>All Claims of the Underlying Action "Arise out of" Employment-Related Practices (ERP)</u>

As noted above, claims covered under Coverage A and/or Coverage B are subject to the ERP Exclusion. There is no question the claims pled in the Underlying Action (or the claims that *could have been* pled) "arise out of" "employment-related practices" subject to the ERP Exclusion.

Insurers rely on *Guillon*, which is particularly on point, and illustrates that the ERP Exclusion bars coverage for the Underlying Action—including potential claims of false imprisonment and sexual assault claims—because they all "arise out of" an employment-related context. In *Guillon*, the Ninth Circuit Court of Appeals held that the underlying defendant's alleged conduct, including "wrongful termination, sexual harassment, retaliation, unequal pay, [and] less desirable scheduling and shifts, all due to their gender," fell within an identical ERP exclusion even though some of the alleged conduct occurred outside of the workplace. *Guillon v. AMCO Ins. Co.*, No. 20-CV-07926-CRB, 2021 WL 254264 (N.D. Cal. Jan. 26, 2021), aff'd, No. 21-15297, 2021 WL 6102174 (9th Cir. Dec. 22, 2021). The court in *Guillon* applied the following two-factor test introduced by the California Supreme Court in *Low v. Golden Eagle Ins. Co.* to determine if the conduct is within the scope of the ERP Exclusion's employment-related

"practices, policies, acts or omissions:"

> "(1) the nexus between the allegedly defamatory statement (or other tort) at issue and the third party plaintiff's employment by the Insureds, and (2) the existence (or nonexistence) of a relationship between the employer and the third party plaintiff outside the employment relationship."

*Id.* at 1.  The court held that the underlying defendant's conduct was employment-related because (1) each claim alleged conduct that occurred at —or because of employment with—the insureds, and (2) the parties did not have a non-employment relationship.  *Id.*

In the case at bar, the *Low* factors demonstrate that all of the potential claims are employment related.  As to the first factor, all of the alleged conduct occurred while Underlying Plaintiff was employed by the Insureds and was perpetrated by an assistant manager, an Underlying Defendant, while on the job.  All of the alleged actions took place on the Insureds' premises.  There is a clear nexus between the conduct at issue and the Underlying Plaintiff's employment with the Insureds.

Here the nexus is especially closely related because the alleged conduct was perpetrated by the Underlying Plaintiff's supervisor who was vested with authority over her by the Insureds.  Though Insureds argues Underlying Defendant's supervisory duties were limited (he was not *e.g.* the general manager), he **did** have control over hiring and scheduling of workers, including that of the Underlying Plaintiff.  *See* [Uncertified] Transcript of Oral Argument at 5.  Critically, the Underlying Action alleges that Underlying Defendant then used this control over Underlying Plaintiff to further his actions: he purposefully scheduled her to work with him on the same shift to continue the harassment/assault took place.  *See* Underlying Action. ¶ 16-17.

As to the second factor, there is no indication that the Underlying Plaintiff and Moreno had a non-employment relationship.  *Id.*

Further, the Underlying Action includes facts regarding managerial knowledge of Moreno's "history of inappropriate conduct in the workplace with girls."  *See* FAC ¶ 49.  Despite the Insureds' "knowledge of this history of improper behavior," the Insureds' managerial staff tolerated Moreno, and allowed Moreno to switch to the same shift as Underlying Plaintiff where harassment continued.  *Id.*  Underlying Plaintiff alleges that the report of "harassing and

United States District Court
Northern District of California

discriminatory conduct were motivating reasons and/or factors in [Insureds'] decisions to subject Plaintiff to the aforementioned adverse employment actions," and the Insureds "violated FEHA by retaliating against [Underlying] Plaintiff, removing her from the schedule and terminating [Underlying] Plaintiff's employment."  *See* Underlying Action ¶¶ 126, 129.  The challenged conduct thus transcends Moreno and reaches into culpable conduct of the Insureds *qua* employer.

Therefore, the ERP Exclusion bars coverage for the Underlying Action's claims against the Insureds for all counts because the Underlying Action's claims arose out of employment.  This includes: Count One for "negligent hiring, negligent retention, and negligent training and supervision"; Count Two for "workplace sexual harassment . . . on the basis that DRG and GGB had 'direct supervisory authority over Doe'"; Counts Three, Seven, Eight, Nine, and Ten for violations of California Fair Employment and Housing Act (FEHA).  *See* Mot at 16; Underlying Action at ¶¶ 51, 107, 117, 129, 138.  Additionally, Count Four, which states "the conduct of which [the Insureds] subjected [Underlying] Plaintiff by virtue of her employment," is a violation of the Ralph Rights Act of 1976 (Civil Code section 51.7).  *Id.*  Count Five violated the Underlying Plaintiff's civil rights by subjecting her to Moreno's employment-related sexual harassment;" Count Six asserts that the Insureds permitted a hostile work environment as a result of Moreno's acts; and Count Eleven through Thirteen "seek damages for Doe's alleged termination, which . . . constitutes an employment-related practice."  *Id.*  That the alleged conduct by Moreno and the Insureds implicate laws like FEHA which govern the employment relationship underscores the claim in the Underlying Action are employment related and fall within the scope of the ERP Exclusion.

The Insureds do not really contest application of the ERP Exclusion to most of the Underlying claims, but focus their arguments on the false imprisonment, sexual assault and simple negligence claims.  But like all the other claims, these claims clearly arise from the employment relationship.  There is no meaningful distinction, for instance, between sexual harassment and sexual assault when committed on the premises by a supervisor while the employee was on the job.  Nor does the supervisor's act of physically detaining the employee (*i.e.* false imprisonment) in order to sexually harass and assault her while on the job fall outside the ERP exclusion simply

1    because of the severity of the conduct.  As further discussed below, there is persuasive precedent

2    on point.

3        The ERP Exclusion encompasses the Underlying Action's negligence claims because the

4    Insureds' liability was facilitated by their negligence.  The negligence claim that the Insureds refer

5    to in the Underlying Action is inextricably tied up with the alleged employment-related "negligent

6    hiring, negligent retention, and negligent training, and negligent supervision."  ¶¶ 32-36.  Though

7    the Insureds argue negligence is not explicitly mentioned in the ERP Exclusion, (though arguably

8    it is covered by "omissions" stated in the Exclusion), the list of excluded acts is not exclusive.  *Jon*

9    *Davler, Inc. v. Arch Ins. Co.*, 229 Cal. App. 4th 1025, 178 Cal. Rptr. 3d 502 (2014), *as modified*

10   (Sept. 15, 2014) (the phrase "such as" is "illustrative and not limitative," "nonexclusive," and "is

11   not a phrase of strict limitation but is a phrase of general similitude indicating that there are

12   includable other matters of the same kind which are not specifically enumerated.").

13       And finally, although Insureds attempt to impose a new carve-out to the "arising out of"

14   phrase in the ERP Exclusion, arguing that only claims between an employee and an employer (as

15   opposed to harassment between two co-employees) are "employment related," the Insureds fail to

16   cite to any case that imposes such an exception.  Instead, courts have repeatedly construed "arising

17   out of" broadly, even when it is present in an exclusion.  *See, e.g., Jon Davler, Inc. v. Arch Ins.*

18   *Co.*, 229 Cal. App. 4th 1025, 1035 (2014) (holding that false imprisonment claims were covered

19   under the ERP Exclusion because "[a]n average layperson person would understand that the

20   exclusion applies to a category of claims: those arising in the employment setting"); *Guillon v.*

21   *AMCO Ins. Co.*, No. 20-CV-07926-CRB, 2021 WL 254264 (N.D. Cal. Jan. 26, 2021), *aff'd*, No.

22   21-15297, 2021 WL 6102174 (9th Cir. Dec. 22, 2021) (construing "arising out of" broadly in a

23   similar ERP exclusion to apply to conduct deemed "employment-related" under the *Low* factors).

24   "Arising out of" "does not import any particular standard of causation or theory of liability into an

25   insurance policy. Rather, it broadly links a factual situation with the event creating liability and

26   connotes only a minimal causal connection or incidental relationship." *Davler* at 1035.[4]  The

27   _____

28   [4] The Insureds cites to two cases to argue that "arising out of" "requires direct and proximate
      causation to conform with California mandate that exclusions be interpreted narrowly."  *See* Opp.

United States District Court
Northern District of California

nexus to employment required under *Low* may obtain regardless of whether the harasser is a co-worker or a managing agent of the employer.  As noted herein, employer liability under laws like FEHA is not limited to situations where the harasser is a manager; employers have responsibilities to address and prevent sexual harassment by co-workers as well as by supervisors.  *See, e.g., Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1176-79 (9th Cir. 2003) (explaining an employer's affirmative defense of "reasonable care" under Title VII).

Because all alleged conduct in the Underlying Action against Moreno falls under the ERP Exclusion coverage, the Insureds have failed to establish any potential coverage under the PMIC Agreement and thus have failed to state a claim for breach of contract with PMIC.

### 2.    The False Imprisonment and Sexual Assault Claims are subject to the ERP Exclusion

As noted above, the Insureds argue that the potential claims of sexual assault or false imprisonment are not subject to the ERP Exclusion.  Although these claims are not expressly pled in the Underlying Action, this "does not excuse the duty to defend where, under the facts alleged,

---

at 15.  Neither case is on point.  In *HS Service*, the underlying plaintiff was terminated and informed vendors that the insured was experiencing financial difficulty and was a candidate for bankruptcy. *HS Servs., Inc. v. Nationwide Mut. Ins. Co*., 109 F.3d 642, 644 (9th Cir. 1997).  In response, the insured's manager circulated a memo informing its sales representatives on how to respond to inquiries regarding the company's financial status, which stated "[The underlying plaintiff] was terminated by [the insured] for acts involving dishonesty." *Id.* The court held that the insured's alleged defamation was not employment-related because "the purpose of the remarks was to protect [the insured] in the marketplace," and the relationship between the remarks and the underlying plaintiff's employment "was too indirect and attenuated." *Id*. at 644-646.  Here, as noted above with the *Low* factors, there is a direct link between Moreno's acts and Underlying Plaintiff's employment. The conduct at issue occurred after termination of the employment relationship and arose in the context of business competition between the parties.  Reference to the prior employment situation was incidental.

Plaintiffs also attempt to rely on *Partridge* for a narrower interpretation of "arising out of."  In *Partridge*, the court interpreted an exclusion under an insurance agreement broadly for a specific set of facts regarding a "Concurrent Causes Doctrine," yet Plaintiffs fail to argue how that doctrine applies to the instant case.  *State Farm Mutual Automobile Insurance Co. v. Partridge,* 10 Cal. 3d 94, 97 (1973).

1    reasonably inferable, or otherwise known, the complaint could fairly be amended to state a

2    covered liability." *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 287

3    (2014). Thus, the question is whether the facts alleged "could fairly be amended to state a covered

4    liability." *Id.* The Underlying Action alleges that Underlying Defendant (and employee) Moreno

5    "cornered [Underlying] Plaintiff [another employee] into an enclosed room, blocked the door,

6    forcing himself close to [Underlying] Plaintiff, and rubbed his genitals on [Underlying] Plaintiff's

7    buttocks as she tried to leave the room." *See* Underlying Action ¶17.

8        As noted above, the alleged acts arose out of the employment relationship. To support

9    their argument to the contrary, Insureds rely on *Perkins*, an unpublished memorandum, in which

10   the Ninth Circuit reversed a district court's finding that the ERP Exclusion barred coverage for an

11   employee's false imprisonment claim, holding it was unclear if false imprisonment was similar

12   enough to the "employment-related" listed examples. *Perkins v. Md. Cas. Co.*, 388 F. App'x 641,

13   643 (9th Cir. 2010). However, in 2014, the Second Appellate District of California Court

14   interpreted the ERP Exclusion similar to that at issue here as unambiguous, to include false

15   imprisonment. *Jon Davler, Inc. v. Arch Ins. Co.*, 229 Cal. App. 4th 1025 (2014). The court

16   applied the two-factor test from *Low* and held that the false imprisonment arose out of

17   employment-related practices because the employees acted on "a directive from a supervisor at

18   their place of employment" under threat of job loss and the parties did not have a relationship

19   beyond employment. *Id.* The court held that false imprisonment, as the "unlawful violation of the

20   personal liberty of another," "shares general similitude with several of the matters specifically

21   enumerated in the employment-related practices exclusion, such as coercion, discipline, and

22   harassment." *Id.* at 1034. "False imprisonment involves coercion, by force, threat, or otherwise

23   [and]. . .workplace harassment can include false imprisonment, and employment actions often

24   involve both claims." *Id.*

25       In the Underlying Action, Moreno allegedly changed schedules to work directly with

26   Underlying Plaintiff, and then "cornered [Underlying] Plaintiff into an enclosed room, blocked the

27   door, forcing himself close to [Underlying] Plaintiff, and rubbed his genitals on [Underlying]

28   Plaintiff's buttocks as she tried to leave the room." *See* Underlying Action ¶17. As in *Jon Davler*,

United States District Court
Northern District of California

16

the claims of false imprisonment and sexual assault "share[] general similitude with several of the matters specifically enumerated in the employment-related practices exclusion, such as coercion, discipline, and harassment." *Jon Davler,* 229 Cal. App. 4th 1025 at 509.  Applying the *Low* two-factor test, the conduct occurred at work during shifts, was perpetrated by a supervisor who had some control over the victim employee, and the underlying parties had no relationship other than the employment relationship.  The potential claims of sexual assault and false imprisonment are therefore closely intertwined with the workplace harassment claim.[5]  "[T]he fact an underlying claim was not [expressly] listed [in the policy exclusion] . . . does not make the exclusion ambiguous." *Id.* at 1038; *see also Frank & Freedus v. Allstate Ins. Co.*, 45 Cal. App. 4th 461, 471 (1996) (holding that an ERP Exclusion broadly precludes coverage for employment-related wrongful termination and defamation).  Therefore, the potential claims for false imprisonment and sexual assault are employment-related and are precluded from coverage due to the ERP Exclusion.

The Court need not address Insurers' argument contesting whether the claims of the Underlying Action are "occurrences" within the scope of coverage under Coverage A: whether or not they are "occurrences," they would still be precluded by the ERP Exclusion.

### B.    Coverage A is subject to the EL Exclusion

Even if the ERP Exclusion did not bar coverage, coverage for the Underlying Action is also barred by the Employer's Liability (EL) Exclusion under Coverage A.  Insureds counsel admitted this at the hearing on the motion.  *See* [Uncertified] Transcript of Oral Argument at 10[6]

---

[5] Following the hearing on the present motion, Plaintiff filed a Motion for Leave to submit supplemental material. *See* Docket No. 30. The Court GRANTS Plaintiff's Motion for Leave. In the supplemental material, Plaintiff presents a recent development, that Underlying Defendant recently pled "'no contest' to a charge alleging that he penetrated Ms. Maeda's body."  Docket No. 30-1. Plaintiff argues that this shows the facts are still being developed regarding the severity of Underlying Defendant's conduct and that this Motion to Dismiss is premature. But as the Court stated at the hearing, it does not make sense that sexual harassment would be covered by the exclusion but the more severe form of harassment – *i.e.* sexual assault – is not when all the surrounding facts about the nexus to employment are the same.

[6] THE COURT: But the bodily injury -- you would agree, then, that's subject to the employer exclusion –
MR. DAVIS: I do.
THE COURT: -- language?
MR. DAVIS: It is subject to that exclusion.

United States District Court
Northern District of California

1    (agreeing that all claims are subject to the EL Exclusion, but arguing that false imprisonment is

2    not)

3          As discussed above, the EL Exclusion under Coverage A states that insurance "does not

4    apply to "Bodily injury" to [a]n "employee" of the Insureds arising out of and in the course of (a)

5    [e]mployment by the Insureds or (b) [p]erforming duties related to the conduct of the Insured's

6    business." *See* EL Exclusion.  The term "bodily injury" is defined as "bodily injury, sickness or

7    disease sustained by a person, including death resulting from any of these at any time." *Id.*  The

8    PMIC Agreement defines "Bodily Injury" to include mental anguish which arises from the

9    covered bodily injury, sickness, or disease. *Id.*  The Underlying Action alleges that as a "direct

10   and legal result of the acts and omissions of [the Insureds] . . .[the Underlying Plaintiff] has been

11   caused [to], and did suffer and continue to suffer severe and permanent emotional and mental

12   distress, and anguish, humiliation, and embarrassment, fright, shock, pain, discomfort and

13   anxiety." *See* Underlying Action ¶ 25.  The Insureds' liability is based in part upon their negligent

14   hiring, negligent retention, and negligent training and supervision which enabled the sexual

15   harassment committed by Moreno resulting in the Underlying Plaintiff's bodily injuries. *See*

16   Underlying Action ¶¶ 31-46. The causal relationship required under the EL Exclusion obtains.

17         For the reasons stated herein, PMIC's EL Exclusion also precludes coverage for

18   Underlying Plaintiff's bodily injury which arose out of and in the course of her employment by the

19   Insureds.

20

21   **C.     Coverage B is subject to the ERP Exclusion**

22         **Coverage B** of PMIC's Policy provides, in pertinent part:
              **"COVERAGE B – PERSONAL AND ADVERTISING INJURY**
23            **LIABILITY**
              Insuring Agreement
24            We will pay those sums that the insured becomes legally obligated
              to pay as damages because of "personal and advertising injury" to
25            which this insurance applies. We will have the right and duty to
              defend the insured against any 'suit' seeking those damages.
26            However, we will have no duty to defend the insured against any
              'suit' seeking damages for 'personal and advertising injury' to
27            which this insurance does not apply."

28   FAC. Exh.2 at 36, ("Coverage B").

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention, or imprisonment;

FAC. Exh.2 at 45.

The Insureds argue that a potential false imprisonment liability claim– one of the enumerated offenses contained in the definition of "personal and advertising injury"– would be covered under Coverage B for "personal and advertising injury," and thus would not be subject to the EL Exclusion of Coverage A. *See* Opp. at 26. Insureds argument fails because, as noted above, Coverage B is still subject to the ERP Exclusion. Thus, even if there were coverage for a potential false imprisonment claims under Coverage B, the coverage would still be precluded by the ERP Exclusion.

**D.    MAIC's Agreement**

The MAIC Agreement provides coverage for: "bodily injury by accident or bodily injury by disease." *See* FAC. ¶ 25. "Bodily injury" means "physical injury, including resulting death." *Id.* The bodily injury must arise out of and in the course and scope of the injured employee's employment by you." *Id*. MAIC's Policy also obligates MAIC to:

> pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by the Employment Liability Insurance. Id. The damages we will where recovery is permitted by law, include damages:
> 1. For which you are liable to a third party by reason of a claim or suit against you by that party third party to recover damages against such third party as a result of injury to your employee – . . . .
> 4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

FAC. Exh. 1 at 35.

The MAIC Policy contains the C.7 Exclusion which states:
> "This insurance does not cover:
> 7. damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions."

FAC. Exh. 1 at 35.

United States District Court
Northern District of California

In response to the Seventh, Eighth, and Ninth Causes of Action against MAIC, MAIC argues the Underlying Actions are subject to C.7 Exclusion.  *See* Mot. at 20.  The Insureds raise two arguments against C.7 Exclusion: (1) the same argument raised against the PMIC Agreement that "arising out of" should be construed narrowly to not include the Underlying Plaintiff/Defendant; and (2) that any claims for sexual abuse or assault are not plainly barred by the C.7 Exclusion's listed matters ("damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions").

As to the first argument, as discussed above, California courts construe "arising out of" broadly.  Even without a broad construction, the "arising out of" element of the C.7 Exclusion applies here.

As to the second argument, in *Rice Enterprises, LLC*, the Third Circuit court found that an identical C.7 Exclusion precluded coverage for "sexual misconduct," including sexual assault, because the damages arose out of the insured's personnel practices, policies, acts or omissions, specifically in "hiring [underlying defendant] despite his sexual misconduct history, . . . failure to adequately train . . . and take action following the observation and/or reports of [underlying defendant]'s misconduct."  705 F. Supp. 3d 460, 470 (W.D. Pa. 2023), aff'd, No. 24-1880, 2025 (3d Cir. Apr. 30, 2025).  Though the insured asserted coverage by arguing the underlying defendant was not the employer (and instead only an employee), the court interpreted "arising out of" broadly, to preclude coverage due to the causal connection between the employment practices and the underlying action.  *See id*. at 469-70.  The exclusion turned on the nature of the conduct and whether it was related to employment, not the particular identity or status of the perpetrator. As in *Rice*, the potential liability for sexual assault arose from "personnel practices, acts, and omissions."  The Underlying Plaintiff alleges that the manager had received reports that Moreno "had a history of inappropriate conduct in the workplace with girls under the age of 18, but they did nothing to prevent the harassment from continuing."  *See* FAC ¶ 49d.  Additionally, Underlying Plaintiff alleges that the Insureds failed to train Moreno "how to act appropriately with employees."  *See* FAC ¶ 42.  As in *Rice*, the C.7 Exclusion applies.

Therefore, C.7 Exclusion applies to preclude MAIC's coverage for all claims of the Underlying Action, including a potential claim of sexual assault arising out of "personnel practices, policies, act, or omissions."

**E.**    **Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

"A bad faith claim is subject to dismissal if the insurer shows a genuine dispute as to coverage." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669–70 (9th Cir. 2003).  Here, given that ERP Exclusion and EL Exclusion of the PMIC Agreement and C.7 Exclusion of the MAIC Agreement apply to exclude coverage to DRG and GGB, the Insurers' denial to continue defense and indemnification under its policy was reasonable and legally justified.  As such, the Insureds cannot maintain a statutory bad faith claim against Insurers for its refusal to defend and indemnify. Accordingly, the claims for breach of implied contract and claim for breach of the implied covenant cannot proceed against MAIC or PMIC.

**V.**    **CONCLUSION**

For the reasons above, Defendants PMIC's and MAIC's motion to dismiss is **GRANTED**. Defendants PMIC and MAIC are hereby **DISMISSED**.

**IT IS SO ORDERED**.

Dated: July 31, 2025

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California